IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LOREN CUYKENDALL, | CV 04-1333-PK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| MICHAEL T. DOLAN, MICHAEL LEE DOLAN, and BETH DOLAN, | |
| Defendants. | |

PAPAK, Magistrate Judge:

Plaintiff Loren Cuykendall ("Cuykendall") brings this action against Defendants Michael T. Dolan ("Michael Dolan" or "Dolan"), Michael Lee Dolan, and Beth Dolan (collectively, "the Dolans"), seeking to quiet title to certain placer mining claims. Cuykendall also demands that the Dolans be ejected from the subject property and enjoined from "interfering with Cuykendall's possession, use and enjoyment" of the mining claims. Lastly, Cuykendall seeks an award of damages against the Dolans for trespass.

Both parties moved for summary judgment. Defendants also moved to strike a portion of Plaintiff's supplemental brief, while Plaintiff moved to strike the affidavit of Geoff J. Garcia. For the reasons that follow, neither side is entitled to summary judgment. The motions to strike are also denied.

/ / / /

/ / / /

1 - OPINION AND ORDER

BACKGROUND

The principal dispute between the parties is the ownership of certain unpatented placer[1] mining claims on approximately 326.4 acres of federal land in Baker County, Oregon ("the Land") managed by the federal Bureau of Land Management ("BLM").

On April 7, 1974, a placer claim entitled "Excelsior" was located on 159.87 acres of the Land ("original Excelsior claim"). The locators of the original Excelsior claim were listed as Benjamin Gassaway, Sr., Nellsia Gassaway, Ronald Gassaway, Anne Gassaway, James Gassaway, Larry Wellons, Patricia Wellons, and Jason Wellons.[2] The original Excelsior claim was recorded on June 20, 1974, more than 60 days after the notice was posted on the Land.

On September 15, 1975, placer claims entitled "Excelsior claims 9-16" were located on 159.81 acres of the Land. The claims were recorded as a single placer claim in Baker County on September 19, 1975. The locators of the Excelsior claims 9-16 were listed as Benjamin Gassaway, Jr., June Gassaway, Terrance Lee Gassaway, Linda Gassaway, Grant Major, Mattie Major, Dan Parr, and Susan Parr.

On November 7, 1975, placer claims entitled "Excelsior claims 1-8" were located on 155.24 acres of the Land and recorded in Baker County. The individuals identified as the locators were the same as for the original Excelsior claims.

On November 7, 1975, placer claims entitled "Excelsior claims 17-18" were located and recorded on 11.35 acres of the Land. Benjamin Gassaway, Sr., was identified as the sole locator. Other Excelsior claims (19-22) were located in 1979.

In 1979, the various Excelsior claims were filed with the BLM as required by 43 U.S.C. § 1744 (1976), a provision of the recently enacted Federal Land Policy Management Act ("FLPMA"). A note in the BLM file, dated August 6, 1979, indicates that a BLM employee:

---

[1] "Placer" means "ground within defined boundaries which contains mineral in its earth, sand, or gravel; ground that includes valuable deposits not in place, that is, not fixed in rock, but which are in a loose state, and may in most cases be collected by washing or amalgamation without milling." United States v. Iron Silver Mining Co., 128 U.S. 673, 679 (1888).

[2] Five of the eight named locators --Benjamin and Nellsia Gassaway, and the three Wellons-- are now deceased.

> Contacted owner on this date to verify if location notice, Excelsior, was in fact the original location notice for the above named claims.
>
> Owner verified that it was not a separate mining claim filing -- that it was indeed the original location notice for claims 1-8 and 9-16.
>
> Explained that we would therefore issue a refund in the amount of $5.00 since it was not a separate mining claim filing.

The identity of the "owner" who provided the information to the BLM employee is unclear. A total of 16 persons are listed as locators of the Excelsior 1-16 claims.

Michael T. Dolan's involvement with the Excelsior claims began in 1975, when he reportedly leased certain of the claims. Dolan also states that in 1979, he entered into a joint venture with the Gassaways and Wellons, pursuant to which he acquired a one-third interest in the Excelsior 1-8 and 9-16 claims. It does not appear that this oral agreement was ever reduced to writing.

Dolan states that, in 1993, he was informed that "the Gassaways and Wellons" had purchased their children's interests in the mining claims. On April 23, 1993, Benjamin Gassaway, Sr., and Larry Wellons executed a quitclaim deed, conveying to the Dolans any interest the grantors had in the Excelsior 1-8, 9-16, and 17-18 claims. On the same day, Benjamin Gassaway, Sr., and the Dolans executed a quitclaim deed in favor of Larry Wellons[3] covering the Excelsior 9-16, 17-18, and 22 claims. The record does not show the order in which these instruments were executed. These deeds were not recorded until 1998. On October 2, 1998, Benjamin Gassaway, Sr., and Larry Wellons executed a quitclaim deed in favor of Michael T. Dolan, covering the Excelsior 1-8, 9-16, 17-18, 19, 20, 21, and 22 claims.

Meanwhile, at some point --the record gives two dates, 1990 and 1995-- Cuykendall and Michael Dolan allegedly entered into some sort of oral partnership or joint venture[4] regarding the Excelsior claims. Dolan contends the agreement ended in 1996, and that Cuykendall "had

---

[3] Michael Dolan's declaration in opposition to summary judgment describes this instrument as being a quitclaim in favor of the Dolans. That is not what the instrument says.

[4] The terms of their relationship were not reduced to writing. The significance of the form of that relationship is not before this court.

3 - OPINION AND ORDER

nothing to do with the claim [after this] until 2002," while Cuykendall contends their agreement continued until at least August 2003.[5]

The federally-mandated annual assessment for the year 2001 was not timely paid on the Excelsior 9-16 and 17-18 claims (and on three other claims not relevant here). As a result, on January 24, 2001, the BLM declared those claims to have been forfeited. It is unclear, from this record, whether the failure to pay the annual fee was an oversight or a deliberate decision, and whether Dolan's partnership with Cuykendall played any role in those events. Dolan states that "we intentionally" forfeited the Excelsior 9-16 claims, but indicates that Cuykendall contends otherwise.

Since Cuykendall intended to make a sizable investment in the Excelsior venture, he had his attorneys investigate the title. Their report raised some concerns. Cuykendall and Dolan then agreed that, to ensure there was no doubt regarding the title, they would relocate and record the claims under the name "Blue Rock," with Cuykendall owning an undivided one-half interest as a co-tenant, and the Dolans owning the other undivided one-half interest. On November 18, 2002, Cuykendall and the Dolans executed notice of location forms for Blue Rock claims 1-18, which corresponded with the locations of the Excelsior 1-18 claims. They also reportedly executed notice of location forms for Blue Rock 19-34 claims, though it is unclear exactly how those particular mining claims fit into this case. Finally, a notice of location for the Blue Rock 35 claim was executed on December 23, 2002, and recorded on January 8, 2003.

On November 18, 2002, Cuykendall recorded the notices of location for the Blue Rock 1-34 claims. Michael Dolan was to post copies on the claims. Whether Dolan did so is disputed. According to Dolan, when the papers were signed on November 18, 2002,

> I told Cuykendall that I couldn't locate Blue Rock 19 thru 34 claims because of the locked gate on the only road to the claims, the ground was frozen with several inches of snow in the canyon. I could not carry posts, post hole digger and my oxygen tanks as I am on oxygen 24-7. Cuykendall told me don't worry about it, no one else can get up in there. At the time of recordation, none of the claims had been staked, but Cuykendall recorded them anyway. I started posting claims on

---

[5] Dolan also contends that any oral agreement is void under ORS 517.110.

4 - OPINION AND ORDER

> November 23, 2002, and was finished posting the 1 thru 18 claims. During posting I noted that Cuykendall's lawyer had missed one piece of ground. I called Cuykendall and his lawyer made papers for claim no. 35. That's why it was filed later than the other claims.

Dolan also states that he showed Cuykendall the location stakes in December 2002.

In a letter to Dolan dated October 23, 2003, Cuykendall recounted his own version of the partnership agreement and the reason for the Blue Rock filings. Cuykendall then stated:

> I was deeply disappointed when you called me the last week of September [2003] to tell me that claims 19 through 35[6] were not legal because you had not monumented them. And again one week later to tell me the rest of the claims were not legal because you had not put the notice of location paperwork in the monuments. You told me this was because you were not sure our partnership was going to work for you and this gave you a way out. You have since paid for BLM rent on some of the original association claims and started development of those properties with funding from sources that I was developing prior to you telling me the claims were illegal.
>
> Under the circumstances I expect to be reimbursed for the expenditures I made for research, maintenance, legal and your support during the time of our supposed partnership.

Cuykendall states that on October 25, 2003, he went to the Land and posted new claims in his own name and that of Rodney Greenwell (who is not a party to this action). The new claims, entitled Green Rock Claims 1-18, and 35, cover the same locations as the Excelsior and Blue Rock 1-18 and 35 claims. The Green Rock notices were recorded on October 27, 2003. It is unclear whether Dolan received Cuykendall's October 23 letter before Cuykendall allegedly posted the new claims on October 25.

By letter dated December 4, 2003, Cuykendall's counsel informed Dolan of the Green Rock filing. Dolan says he inspected the site on December 7, 2003, and found that only four of the notices had been posted on the right sites. The other notices allegedly were posted on private land, and not the situs of the mining claims.

/ / / /

---

[6] It is unclear why the parties are so vigorously disputing the posting of the Blue Rock 19-34 claims, when those particular claims do not appear to be at issue in this action.

5 - OPINION AND ORDER

On or about December 27, 2003, the Dolans posted their own set of locations notices for the disputed parcels, which notices were recorded on February 13, 2004. The parties have referred to these as the Excelsior II claims.

Meanwhile, on September 17, 2003, someone procured documents from Anne, Ronald, and James Gassaway, purporting to release any interest they had in the various Excelsior claims and denying that they had authorized use of their names on the location notices or had benefitted from the mining claims. Ronald Gassaway also purported to execute the document as executor for the estate of Nellsia Gassaway. In addition, the document purports to speak to the knowledge or actions of other persons then deceased.

It is unclear, from the present record, what prompted the execution of this instrument more than 29 years after the original Excelsior claim was filed. Given the reference in the document to concern over liability, and the timing, one possible inference is that someone warned these individuals that they might be liable financially for activities associated with any mining operations (such as reclamation costs) but could avoid liability by signing this document. Dolan disputes the truth of the statements made in that document. He points to other statements allegedly made to Dolan and actions allegedly taken that appear to conflict with the statements made in the release.

No one paid the annual maintenance fee for the Blue Rock claims for 2005. Consequently, the parties agree, those claims have now been forfeited (assuming, without deciding, they were ever valid to begin with).

Finally, Cuykendall states that on February 9, 2006 --after oral argument on these summary judgment motions--he went to the Land and posted still another set of mining claims, which he recorded the same day. The parties have labeled these the Green Rock II claims.

The parties agree that the Excelsior 9-16, 17, 18, 19, 21, and 22 claims were determined by the BLM to have been forfeited on January 24, 2001. The Blue Rock claims were forfeited in 2005. The validity of the Green Rock II claims is outside the scope of these summary judgment motions. By these cross motions for summary judgment, the parties seek to have this court determine the validity of the various placer mining claims on the Land.

6 - OPINION AND ORDER

CROSS MOTIONS FOR SUMMARY JUDGMENT

**I.    Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure authorizes the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Only after the moving party has made such a showing does the burden shift to the opposing party to show that a genuine issue of fact remains. See Fed. R. Civ. P. 56(e).

To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial. See Celotex Corp., 477 U.S. at 322-23; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). The opposing party may not rest on conclusory allegations or mere assertions, see Taylor, 880 F.2d at 1045; Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, see Anderson, 477 U.S. at 249-50; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Taylor, 880 F.2d at

1045.

## II.     Preliminary Matters

### A.     Subject Matter Jurisdiction

The Dolans argue that the mining claims are worthless, hence Cuykendall has not met the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a).  However, the Dolans have not shown "to a legal certainty" that the amount in controversy is less than $75,001.  Therefore, the court has diversity jurisdiction over this matter.  St. Paul. Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).  The Dolans also have not shown that Cuykendall is obligated to pursue this matter through administrative proceedings rather than litigation.

### B.     Lack of a Valuable Mineral Discovery and Standing

The Dolans argue that this action "must be dismissed because the mining claims in question are valueless."  That argument is ironic, given that the Dolans' own claim to possession is premised upon the contention that a valuable mineral discovery was made on each of the disputed tracts.  The Dolans cannot seriously contend that they may hold this land, against all others, for 32 years now on the mere assertion that they are still searching for a valuable mineral discovery.  The Dolans point to no authority extending the doctrine of *pedis possessio* to that length.[7]  At some point--and 32 years would seem more than long enough--a would-be discoverer who is unable to locate a valuable mineral discovery must step aside and let others take a try.  In any event, the Dolans' current contention that no valuable discovery has been made is directly contradicted by the statements that they, and their predecessors-in-interest, made when locating these claims.

Alternatively, the Dolans may simply be asserting that Cuykendall has not demonstrated his own standing to challenge the Dolans' claims.  A private individual challenging the mining claim of another person ordinarily must make a prima facie showing of the validity of his own

---

[7] The doctrine of "pedis possessio" protects a person (1) who is in actual possession of the site, (2) and actively searching for, but has not yet made, a valid discovery, (3) from forcible or fraudulent entry by another.  See Cole v. Ralph, 252 U.S. 286, 294-95 (1920).  The purpose is "to give him room for work and to prevent probable breaches of the peace."  Hanson v. Craig, 170 F. 62, 65 (9th Cir. 1909).  The facts of this case do not implicate that doctrine.

8 - OPINION AND ORDER

claim.  See Inman v. Ollson, 213 Or. 56, 62-83 (1958); Sharkey v. Candiani, 48 Or. 112, 125 (1906) (no standing to contest compliance with location and notice requirements, when challenger had made no location himself).  This requirement ensures the court is not adjudicating abstract challenges.  A challenger must have an interest in the dispute and be reasonably likely to benefit from a favorable decision, or he lacks standing to pursue the challenge.

One prerequisite to a valid mining claim is "discovery" of a valuable mineral deposit. Discovery is "accomplished where 'minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine.'"  United States v. Murdock, 65 IBLA 239, 241 (1982).

"[W]hen the controversy is between two mineral claimants, the rule respecting the sufficiency of a discovery of mineral is more liberal than" in some other circumstances, such as in a dispute "between a mineral claimant and one seeking to make an agricultural entry," Chrisman v. Miller, 197 U.S. 313, 323 (1905), or when the United States is itself contesting the validity of the mining claim.  Murdock, 65 IBLA at 243 ("the standard in a Government contest is far stricter" than in a contest between rival mineral claimants); Silver Jet Mines, Inc. v. Schwark, 682 P.2d 708, 712 (Mont. 1984) (in a contest between rival mineral claimants, "the burden of proving discovery is not too high").

Cuykendall has made a sufficient showing of a valuable discovery to have standing to pursue this action.[8]  Defendant's predecessors in interest represented that such a discovery had been made, and the Dolans themselves endorsed that representation over the years.  Cuykendall is not required to show that he personally made a unique discovery that no one else had previously found.  A subsequent locator, such as Cuykendall professes to be, may adopt the

---

[8] I need not (and therefore do not) decide whether either party has made a showing of a valuable mineral discovery sufficient to withstand a challenge brought by the United States. Cf. Lara v. Secretary of the Interior, 642 F. Supp. 458, 462 (D. Or. 1986) (affirming ALJ's determination, in contest brought by United States, of no valuable discovery by claimant because "the gravel deposits on the claims had been worked before and whatever gold that existed had been extracted" and the claimant had "failed to produce any documented evidence of his gold recoveries, and conceded that he had done little work and recovered little gold over the years").

9 - OPINION AND ORDER

discoveries made by a prior locator. Babcock v. O'Lanagan, 7 Alaska 171, 176 (1924). See also Nevada-Pacific Development Corp. v. Gustin, 226 F.2d 286, 287-88 (9th Cir. 1955) (where both sides are claiming the same vein or lode, "no more than a slight showing by a prior locator of discovery of a mineral bearing vein or lode is needed to satisfy the legal requirements requisite to a valid location").

### C.     Defective Complaint

Defendant asserts that the Complaint is defective for not alleging that Rodney Greenwell, co-locator of the Green Rock claims, is an American citizen. There is precedent, however, that failure to plead this fact does not render a complaint fatally defective in an action to quiet title. See Thompson v. Spray, 72 Cal. 528, 533-34 (Calif. 1887).[9]

### III.    Validity of Original Excelsior and Excelsior 1-8 Claims

#### A.     Amended Notice of Location

The contents of a notice of location, and the manner of recording the notice, "were left to the local mining districts and the various states." United States v. Haskins, 49 IBLA 1 (1981); 30 U.S.C. §§ 22, 28. Of course, state law must not conflict with federal mining laws, but no party has suggested that is the situation here.

"The law at the time of the attempted location controls in a determination of whether a mineral location was valid." Boscarino v. Gibson, 672 P.2d 1119, 1121 (Mont. 1983). Consequently, unless otherwise noted, all statutory references are to the versions of those laws in effect during 1974 and 1975, when these events transpired.

ORS 517.044 specifies the requirements for posting the "location" notice. ORS 517.052 then provides, in relevant part, that:

> The individual locating a placer deposit shall, within 60 days from the posting of the location notice upon the claim, file for record with the clerk of the county where the claim is situated, a copy of the notice posted by the individual upon the claim.

The parties agree that the original Excelsior claim was posted on April 7, 1974, but was

---

[9] Neither side contends that Greenwell is a necessary party to this action.

10 - OPINION AND ORDER

not recorded until June 20, 1974, which was two weeks too late.  ORS 517.065(2) provides that:

> Except as provided in ORS 517.060, all locations or attempted locations of placer mining claims made after August 9, 1961, that do not comply with the provisions of ORS 517.042 to 517.052 are void.

ORS 517.060, in turn, provided, that:

> If at any time an individual who has located a mining claim within the meaning of ORS 517.010 or 517.044, or the assigns of the individual, apprehends that the original notice of location of the mining claim was defective, erroneous, or that the requirements of the law had not been complied with before the filing of the notice, such locator or assigns may post and file for record in the manner now provided by law, an amended notice of the location which shall relate back to the date of the original location; provided, that the posting and filing of the amended notice of location shall not interfere with the existing rights of others at the time of posting the amended notice.

On November 7, 1975, a notice of location was posted and recorded.  The notice for the Excelsior 1-8 claims named the same eight individuals named as locators of the original Excelsior claim, and it encompassed (with minor revisions) the same area.  "Mended" is hand-written at the top, above the words "Notice of Location of Placer Claim."

Cuykendall contends this was an attempt to file an amended notice of location.  He then reasons that this instrument is a nullity because the original Excelsior claim was void for failure to satisfy the recording requirement within the 60 days permitted by ORS 517.052.  An amendment to a void document is itself void, Cuykendall argues.

The Dolans respond that--even assuming the Excelsior 1-8 filing was an "amended" notice of location, rather than a new location--such a notice is permitted by ORS 517.060.

The parties have not found any case interpreting ORS 517.060 in the context of this issue.[10]  Several things are clear, though.

First, the law provides that the amendment may be made "at any time."  Therefore, amending a notice in November 1975 would be timely, notwithstanding that it was done after the

---

[10]  Because the issue is unlikely to arise often, I will not *sua sponte* recommend certification of this question to the Oregon Supreme Court.

11 - OPINION AND ORDER

expiration of the 60 day period established by ORS 517.052. Second, ORS 517.060 makes an amended notice subordinate to any intervening rights, such as claims located subsequent to the original posting but before the amended notice was posted. In this case, the parties agree that no intervening rights exist.

The question, then, is whether failure to record the original notice within the 60 day window established by ORS 517.052 is the kind of defect that can be cured by posting and recording an amended notice. I conclude it is.

Cuykendall reasons that the class of defects that may be cured under ORS 517.060 is limited to such things as the contents of the notice or its placement. The statute does list defects in the notice as one kind of error that may be cured, but that is not all. An amended notice is permitted if the claimant "apprehends that the original notice of location of the mining claim was defective, erroneous, *or that the requirements of the law had not been complied with before the filing of the notice . . . .*" (emphasis added). The "filing of the notice" means the requirement in ORS 517.052 that the claimant "file for record with the clerk of the county where the claim is situated, a copy of the notice posted," *i.e.,* that it be recorded.[11]

Since the original Excelsior notice was recorded late, the requirement that the notice be recorded within 60 days is a requirement of law that was not complied with "before the filing of the [original] notice" and may be remedied by complying with the provisions of ORS 517.060.

Cuykendall also relies upon the section heading in the Oregon Revised Statutes, which is labeled "517.060 Correcting defective or erroneous notice of location; amended notice." From this heading, he reasons that this section is necessarily confined to defects in the notice itself. However, "section and subsection heads or titles" in the Oregon Revised Statutes "do not constitute any part of the law." ORS 174.540. With limited exceptions not present here, the headings are not part of the bill enacted by the Legislature. Rather, they are added by the

---

[11] See also ORS 517.046(2), which refers to "the notice required to be filed under ORS 517.052 . . . ." The phrase "filing of the notice" in ORS 517.060 could not have been a reference to the filing requirement under the Federal Land Policy Management Act, 43 U.S.C. § 1744, as that requirement was not established until 1976. ORS 517.052 subsequently was amended to use the modern term "record" but that was a mere stylistic revision. 1991 Oregon Laws, c. 230, § 26.

12 - OPINION AND ORDER

compiler of the Oregon Revised Statutes for the convenience of the reader.  Church v. Grant County, 187 Or. App. 518, 526 n.4 (2003).

Allowing a miner to file and record an amended notice, if the first notice was recorded late, is consistent with the overall statutory scheme and with the purpose of the recording requirement.  The purpose of recording is to give notice to innocent third parties.  The amended notice is expressly made subject to any intervening rights that may have arisen.  This avoids any prejudice to innocent third parties.  This construction of ORS 517.060 also is consistent with the "established rule" that, in general, "mining statutes are to be liberally construed . . . ."  Inman, 213 Or. at 62; Kramer v. Sanguinetti, 33 Cal. App.2d 303, 309 (Calif. App. 1939).

While the original Excelsior and Excelsior 1-8 claims may be valid in light of the November 7, 1975, amended notice of location, and thus appropriate for summary disposition, Cuykendall raises additional issues regarding the validity of those claims, discussed below, that require resolution of disputed factual issues and preclude summary judgment.

### B.     Dummy Locators

Cuykendall contends that most of the locators named in the original Excelsior and Excelsior 1-8 claims were "dummy locators."  The mining laws limit an individual placer claim to 20 acres each.  30 U.S.C. § 35.  Up to eight persons or entities may file an "association" claim, with each claimant entitled to 20 acres.  30 U.S.C. § 36.  Consequently, an association claim filed by eight locators may encompass up to 160 acres.

"Dummy locators" are persons (whether real or fictitious) listed as locators on an association claim not for their own benefit, but as mere placeholders for the benefit of another who either does not meet the qualifications to be a claimant or, more commonly, is attempting to evade the laws limiting individual placer claims to 20 acres each.  See United States v. Brookshire Oil Co., 242 F. 718, 721 (S.D. Calif. 1917) ("Any device whereby one person is to acquire more than 20 . . . acres in area, by one discovery, constitutes a fraud upon the government . . . ").  However, a person need not be present in order to be a valid locator, United States v. California Midway Oil Co., 259 F. 343, 354 (S.D. Calif. 1919), or, some cases have held, even be aware of or have authorized the use of his name so long as the claim was genuinely

13 - OPINION AND ORDER

intended for his benefit. Thompson, 14 P. at 184-85.

Whether some or all of the locators named in the Excelsior claims were "dummy locators," and the implications of such a conclusion, will require resolution of disputed factual questions that preclude summary judgment for either side on that issue. See, *generally,* Brookshire Oil Co., 242 F. 718; Cook v. Klonos, 164 F. 529, *modified*, 168 F. 700 (9th Cir. 1909) (even if some locators were fraudulent, remaining locators were entitled to select 20 acres each from the 160 acres); Rooney v. Barnette, 200 F. 700, 708-09 (9th Cir. 1912) (if agreement between Barnette and six absent locators granting him a share of their individual interests in the claim was not made until after location of the claim and discovery of gold, then they were not dummy locators); United States v. California Midway Oil Co., 279 F. 516, 520 (9th Cir. 1922) (location not invalidated by fact that, afterwards, agent dealt with association claims as his own and ignored locators in whose name he had staked the claim, so long as he acted in good faith when the claim was located); Thompson, 14 P. at 184-85 (discussing authority of one locator to file claims on behalf of other locators, even without their knowledge); Chanslor-Canfield Midway Oil Co. v. United States, 266 F. 145, 149-50 (9th Cir. 1920).

The parties should also be prepared to address whether proof that a claim is fraudulent must be clear and convincing or by a mere preponderance, cf. California Midway Oil Co., 259 F. at 352 (applying clear and convincing standard), and whether Dolan's acquisition of the interests of some (or perhaps all) of the named locators inoculates this 31-year old claim from a "dummy locator" challenge if Dolan was a good faith purchaser for value, particularly when many of the participants in those events are now deceased. Cf. id. at 351.

### C.     Abandonment

Deciding whether Dolan abandoned the Excelsior 1-8 claims by participating in the Blue Rock relocation, as Cuykendall contends, will require the court to resolve factual questions. Neither side is entitled to summary judgment. The parties should be prepared to address the implications of their alleged partnership or co-tenant relationship, when any such relationship ended, any breach of fiduciary duty by either party, and whether the actions of one party inured

14 - OPINION AND ORDER

to the benefit of all, as such relates to the Blue Rock and Green Rock locations. Cf. Stevens v. Grand Central Mining Co., 133 F. 28 (8th Cir. 1904); Cadle v. Helfrich, 286 P. 186 (Ariz. 1930); Clarke v. Mallory, 70 P.2d 664 (Calif. App. 1937); Swisshelm Gold Silver Co. v. Farwell, 124 P.2d 544 (Ariz. 1942).

### D. Adverse Possession

The Dolans contend that even if the 1975 Excelsior 1-8 claims notice was not valid, they and their predecessors have satisfied the requirements of 30 U.S.C. § 38, which provides that:

> Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto . . . in the absence of any adverse claim . . . .

In Oregon, the applicable time period is ten years. ORS 12.050. Whether the Dolans, or their predecessors, have satisfied that ten year requirement is a disputed question of fact.[12] Neither side is entitled to summary judgment on this issue. Although I have already decided that, except for consideration of dummy locators and abandonment, the Excelsior 1-8 claims are valid, I will consider the issue of adverse possession at trial, as the Dolans' alternate claim, and to complete the record for appeal.

## IV. Validity of Green Rock Claims

### A. Green Rock Postings

Whether the land was open to location at the time Green Rock was posted remains to be determined, along with the partnership and co-tenancy issues discussed above. Dolan also asserts that the Green Rock claims were not properly posted. Cuykendall counters that Dolan already knew the boundaries. Some decisions do indicate that actual knowledge of the boundaries may be sufficient, at least as against a rival claimant with actual notice of the boundaries. Steele v. Preble, 158 Or. 641, 664 (1938); Flynn v. Vevelstad, 119 F. Supp. 93, 96

---

[12] I decline to follow the suggestion in George v. Lyons, 110 F. Supp. 711, 712 (D. Ak. 1953), that 30 U.S.C. § 38 applies only to proceedings for a patent, and not in private disputes between rival claimants.

15 - OPINION AND ORDER

(D. Ak. 1954).  But cf. ORS 517.065(2) (which post-dates Steele by 23 years) (claims that do not comply with the requirements of ORS 517.042 through 517.052 are "void" except as provided in ORS 517.060).  In addition, the "actual notice" requirement usually is applied when the person being estopped was involved with the contested location, or otherwise had been shown the boundaries.  Cf. Kramer, 33 Cal. App. 2d at 309; Berquist v. West Virginia-Wyoming Copper Co., 106 P. 673, 683-84 (Wyo. 1910).  But cf. Ninemire v. Nelson, 249 P. 990, 991-92 (Wash. 1926) (defendant's actual knowledge of prior claim was shown by his contemporaneous statements asserting defects in the location notices); Dennis v. Barnett, 30 Cal. App. 2d 147 (Calif. App. 1938).

Cuykendall deliberately established the Green Rock locations outside of Dolan's presence.  Dolan claims that when he went to view this alleged new location, he found only a few claims contained the required notices.  In addition, Cuykendall himself is contending that the Blue Rock claims were void because Dolan failed to properly post the notices on those claims, even though Cuykendall seemingly had at least as much actual notice regarding the boundaries of the Blue Rock claims.  Finally, it is unclear whether any of this matters because the location description in the Green Rock notices was by legal description.  Given the inadequacy of the present briefing and factual record, and the uncertainty regarding whether this issue will be necessary to the outcome of the case, summary judgment is denied on this issue.

### B.  Forfeiture of Excelsior 9-18 and 35 Claims

Cuykendall contends Dolan forfeited the Excelsior 9-18 and 35 claims in 2001 by failing to pay the annual assessment, see 30 U.S.C. § 28i, hence the ground was available for Cuykendall to locate his own Green Rock claims there.  That may be correct.  However, there remain some lingering questions regarding the circumstances leading to the forfeiture of the earlier claims and the establishment of the Green Rock claims, and regarding the alleged partnership relation between the parties around that same time period.  There also are questions concerning the adequacy of the Green Rock posting, as discussed above.  For now, the court declines to enter summary judgment on this issue.

/ / / /

////

## MOTIONS TO STRIKE

Cuykendall's Motion to Strike the Affidavit of Geoff J. Garcia is denied. The Dolans' Motion to Strike a portion of Cuykendall's supplemental brief is denied. Even assuming the estoppel argument is new, the legal theories of both sides have evolved as the case progresses.

## CONCLUSION

Plaintiff's Motion for summary judgment (No. 42) is denied. Defendants' Motion for Summary Judgment (No. 21) is denied. Plaintiff's Motion to Strike the Affidavit of Geoff Garcia (No. 67) is denied. Defendants' Motion to Strike (No. 79) a portion of Plaintiff's Supplemental Brief re Abandonment and Priority of Claims is denied. The court will schedule a telephone conference with the parties to discuss the next phase of this case.

Dated this 3rd day of August, 2006.

/s/ Paul Papak
Honorable Paul Papak
U.S. Magistrate Judge

17 - OPINION AND ORDER